## SPRINGBORN, Plaintiff-Appellee, v. ANITA LAND COMPANY and WEETON, Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22037.   Decided February 26, 1951.

Krueger, Gorman & Davis, Cleveland, for plaintiff-appellee.
Thompson, Hine & Flory. Cleveland, for defendant-appellant.

(STEVENS, PJ, HUNSICKER, J, DOYLE, J, of 9th District sitting by designation.)

### OPINION

By HUNSICKER, J:

The facts in this appeal on questions of law and fact are found by this court to be as follows:

Walter W. Springborn, herein called Springborn, filed an action in the Common Pleas Court of Cuyahoga County, Ohio, on October 3, 1940, against The Anita Land Company, herein called Land Company, Walter E. Weeton, herein called Weeton and Vera W. Strong, for accounting, injunction and equitable relief.   Thereafter, the cause of action against Vera W. Strong was dismissed.

Springborn and Weeton were partners in the operation of gasoline stations and in the year 1925, incorporated the Land Company, whose purpose was to own and acquire real estate.   After the Land Company was organized, Springborn and Weeton incorporated The Terminal Oil Company, herein

called Oil Company. The Oil Company is not a party to this action, but reference must be made thereto because of the relationship it bears to the issues of this case.

Springborn and Weeton each contributed an equal amount of money or property to the Land Company and each was the owner of one-half of the five shares issued by the Land Company. These shares were issued in one-share certificates to Springborn, Weeton, Springborn's wife (the sister of Weeton and from whom Springborn was later divorced), Weeton's wife and John Weeton, a brother of Walter E. Weeton. These certificates were then endorsed, by each stockholder, in blank and deposited in the safe deposit box of the Land Company.

The Land Company, in the year 1931, issued to Springborn and Weeton, notes (2 to each party) aggregating the total amount of the contributions each had made for the acquisition of the various properties transferred to the Land Company. These notes were carried each year on the statement of assets and liabilities of the Land Company as a liability of such company. At first, these yearly statements did not separate such note liabilities, but later statements carried these notes separately, showing an amount due Springborn and an amount due Weeton. These notes were endorsed when received by the respective parties, and deposited in the Land Company safe deposit box.

The Land Company was not operated as the usual corporation is operated. The controlling parties, for the first years of corporate existence, were together nearly every day discussing the affairs of the corporation and reporting on their individual activities in the purchase of land and the management of the properties. Springborn was a so-called outside man, and Weeton was the keeper of the records.

One of the properties purchased at the instance of Springborn was a farm in Summit County, Ohio. Springborn moved to this farm and managed it for the Land Company. Weeton operated and managed for the Oil Company a gasoline station at 300 Central Viaduct, Cleveland, Ohio. The real estate on which this gasoline station was located was owned by the Land Company.

The records show that Springborn accounted for proceeds from the farm until 1935, but no record is found of the farm operation from that time until the farm was sold at foreclosure sale in 1940. Although this farm was equipped with machinery and livestock owned by the Land Company, no record is found as to the disposition of such personal property except Springborn's statement that he just left it go to "hell."

There is a complete record of the operation of the Oil Company gasoline station from the time it began business,

until the land occupied by it was sold at sheriff's sale. This business was closed for a period of about two years when Weeton worked in a defense plant during a portion of the war period. The personal property at this gasoline station (which personal property was an asset of the Oil Company) is still being used by Weeton, who is operating it under a nebulous arrangement with his sister, Vera W. Strong, the purchaser at a mortgage foreclosure sale, of the land on which such gasoline station is located.

The corporate records of the Oil Company disclose that from 1934, when Weeton began operation of the gasoline station, until it no longer was a Land Company property, he had a total income of $18,187.78. The corporate records show that Weeton was not paid for his services in operating this business and that this sum (approximately $160 per month during the time of its operation) was used to compensate Weeton for his work at the gasoline station. No rent was paid to the Land Company by the Oil Company during the time the gasoline station was being operated by Weeton.

Income from the properties was not sufficient to pay taxes, insurance (where needed) payments and interest on mortgages and upkeep. Springborn had domestic difficulties with his then wife, the sister of Weeton, and was divorced by this wife in 1937. Springborn and Weeton were no longer in daily contact with the inevitable result that almost all things connected with the Land Company went the way of the farm personal property.

At the time this action was brought, all parties could have had a clearer memory of the affairs of the Land Company, if the action had been speedily tried. Why ten years has elapsed before trial is not now a matter for judicial speculation. The gradual dissipation of the substantial holdings of the Land Company was in some measure attributable to the general economic dislocations of the 1930's but such dissipation is also attributable in large measure to the attitude of the stockholders, Springborn and Weeton. We do know that the following assets are still owned by the company:

Bank account in the Cleveland Trust Co..       $ 380.82
Balance of sale price of Mary Ave. property       6849.35
Bliss Rd. property (now in tax foreclosure with
very little equity for the land company)

Weeton secured a judgment in 1940 on each of the notes which in 1931 had been issued to him by the Land Company, and then proceeded to enforce these judgments against the assets of the Land Company. A credit on these judgments was obtained by Weeton by using some liquid assets of the Land

Company for that purpose. Weeton claims a lien on the balance of the sale price of the Mary Avenue property by virtue of a land levy on such property, which, after the sale of such property was transferred to the proceeds now held under an order of the court awaiting disposition of this action.

Springborn asks this court to require Weeton "to give an accounting, so that this court may determine the amounts due and owing the various parties" to this action:

"that the defendant Walter E. Weeton be made to give an accounting of all funds of defendant corporation, The Anita Land Company which have come into his hands from 1933 until the present time, including those funds which he will receive during the pendency of this action; that the plaintiffs herein be given a judgment for any amounts found owing them after said accounting, including interest at the rate of six percent (6%) per annum from the date of the conversion of said money; that said cognovit judgments taken by defendant, Weeton, identified as cases Nos. 500,752 and 500,753 in the Common Pleas Court of Cuyahoga County, Ohio, be vacated and the same set aside; that a receiver be appointed for the defendant, The Anita Land Company; and for such other and further relief as is equitable in the premises."

Weeton filed an answer, which he later amended by filing an answer and cross-petition. Weeton, among other things, says that the judgments he obtained on the notes are valid and subsisting judgments against the Land Company. In his cross-petition Weeton asks:

"that the petition of plaintiff be dismissed; that the plaintiff * * * be required to given an accounting in respect to the farm property and all personal property, of all receipts and disbursements and monies received from said property and all receipts and disbursements in respect to the sale and disposition of personal property from March 20, 1931 to date; that the court inquire into the validity and effect of the judgment liens of Vera W. Strong and Walter E. Weeton, and that the funds from the sale of the West 3rd and Mary Avenue property be ordered distributed in discharge of said liens to the extent of the amount of said funds."

The Anita Land Company filed an answer and counter-claim and later an amended answer and counter-claim asking that:

"the petition of the plaintiff be dismissed; that the plaintiff * * * be required to give an accounting in respect to the farm property and all personal property, all receipts and disbursements connected with the income received from said property, and all receipts and disbursements in respect to the sale and disposition of personal property from the 20th day

of March, 1931 to date; that the defendant, The Land Company, be given a judgment for any amounts found owing it after said accounting; including interest at the rate of six percent (6%) per annum from the date any conversion of said income and proceeds of sale became due this defendant."

Springborn filed a statement of amendment of his petition, in which, among other allegations, he claims that the Land Company was in reality a partnership, not a corporation.

An examination of the voluminous exhibits discloses that Weeton kept records of all the corporate transactions in which the Land Company was involved, except as to the operation of the farm, which admittedly was under the control of Springborn exclusively. Weeton has accounted for all of the income from the properties.

There is no showing of wrongful conduct between Vera W. Strong and Weeton. The action she took to secure the money she had advanced the Land Company was proper and necessary.

The Oil Company is a separate corporation and not a party to this action, and, with the affairs of that company, we have no right to do anything.

The Anita Land Company is a corporation, not a partnership. It is a separate entity and we recognize it as such. This corporation lost its substantial holdings because of the inability or unwillingness of its officers to work in harmony for the best interests of the Land Company. Springborn was the chief officer, since he was, and still is, president of the company.

Springborn and Weeton, the owners of the company, have, by their conduct, permitted all the assets to be lost. This court will leave them where they placed themselves. No relief shall be granted. The petition of Springborn is dismissed and the counter-claim and cross-petition of The Anita Land Company is denied. The cross-petition of Weeton is dismissed.

An entry of judgment shall be prepared by counsel for Weeton, in conformity with this finding.

STEVENS, PJ, DOYLE, J, concur.